**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**AARON ASHE JR.,**<br><br>**Defendant.** | Case No. **1:26-MJ-00074** |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF
PRETRIAL DETENTION FOR DEFENDANT AARON ASHE JR.**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Defendant Aaron Ashe Jr. (hereinafter "Defendant") be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (Firearm/Other Dangerous Weapon) of the Bail Reform Act. On April 7, 2026, Defendant illegally possessed a firearm loaded with one round of ammunition in the chamber and six rounds of ammunition in the magazine. Defendant fled from law enforcement on foot, was apprehended, and refused to let go of the Springfield Armory 9 millimeter firearm on his waistband. In addition to recovering Defendant's firearm from his waistband, officers recovered a backpack that held a variety of controlled substances – including material that field tested positive for THC, Heroin, Crack Cocaine, and MDMA/Ecstasy. Considering the factors specified under 18 U.S.C. § 3142(g), there is no condition or combination of conditions that will reasonably assure the Defendant's appearance in court and the safety of any other person and the community.

**BACKGROUND**

On April 7, 2026, at approximately 11:11 p.m., uniformed officers of the Metropolitan Police Department ("MPD") responded to a radio call about a person with a firearm at 1100 2nd

1

Place SE, Washington, D.C.  An individual called 911 stating that the police needed to "hurry up and come" because a black male with a "red coat" and black pants was "standing with a gun" and "waving a gun" in front of 1100 2nd Place SE.  Off-duty MPD Officer Christopher John was in uniform and driving an MPD cruiser when he heard the First District Dispatch broadcast a lookout at approximately 11:12 p.m. for a black male with a gun wearing a red jacket and black pants in the area of the 1100 block of 2nd Place SE.

Approximately two minutes later, Officer John observed Defendant, who matched the lookout description.  He was wearing a red jacket and black pants, and was walking westbound in the 200 block of L Street SE, near 1100 2nd Place SE.  Officer John attempted to initiate a voluntary interaction with Defendant when another MPD marked cruiser arrived.  Defendant fled on foot toward 2nd Street SE, through a park area.  Officers gave chase and apprehended Defendant in the 200 block of M Street SE.



**Image 1: Officer John approaching Defendant while Defendant walked westbound on the 200 block of L Street SE.**

Law enforcement handcuffed Defendant's right hand while conducting a protective pat down search of Defendant's person. During the pat down search, MPD Officer Mohd Hossain recognized the shape of a firearm on Defendant's waistband from his law enforcement training and experience. Officer Hossain also felt the Defendant's left hand placed on the firearm. Law enforcement ordered Defendant to "let go" and "get off [of] the gun." Defendant did not comply. Law enforcement pepper sprayed Defendant, and Officer Hossain then retrieved the firearm from Defendant's waistband.

The firearm recovered from Defendant was a Springfield Armory, model XD-S, Mod 2, 9mm caliber, semi-automatic handgun with serial number BY268788.  It appeared to be fully functional, able to expel a projectile by means of an explosive, had a barrel length of less than twelve inches, and had the ability to be fired by the use of a single hand.  The firearm was loaded with one round of ammunition in the chamber and six rounds in the magazine.  After the pistol was removed from Defendant's waistband, he was placed under arrest.  Law enforcement also located a Washington, D.C. identification card from Defendant, which confirmed his identity as Aaron Keith Ashe.

At the time of arrest, law enforcement recovered a backpack that Defendant carried on his back.  A subsequent search of the backpack at the police station revealed the following items inside of a mylar bag:

    a. One plastic bag tied in a knot with a beige-off-white color wax-like substance inside, weighing 5 grams.  A field test of the substance had a positive color reaction for THC.

    b. One plastic bag tied in a knot with a black, tar-like substance inside of the bag, weighing 3 grams.  A field test had a positive color reaction for Heroin.

    c. One plastic bag tied in a knot with a white-powdery substance inside of the bag, weighing 1.4 grams.  A field test had a positive color reaction for Crack Cocaine.

    d. One plastic bag tied in a knot with blue pills crushed inside of the bag, weighing 3.1 grams.  A field test had a positive color reaction for the presence of MDMA/Ecstasy.



**Image 2**



**Image 3**



**Image 4**



**Image 5**

A criminal history check revealed that on January 15, 2020, Defendant was convicted of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18, United States Code, Section 922(g)(1) in United States District Court for the District of Columbia, case number 1:19:-CR-00011.  He was sentenced to 27 months of imprisonment with 36 months of supervised release.

On September 2, 2016, Defendant was convicted of Resisting or Interfering with Arrest in Criminal District Court for Montgomery County, Maryland, in case number 1D00356945. Defendant was sentenced to 1 year incarceration with 1 year of incarceration suspended. Defendant was sentenced to probation until June 30, 2017.

On April 7, 2017, Defendant was convicted of Carry Handgun in Criminal Circuit Court for Prince George's County, Maryland, in case number CT160275X and sentenced to 8 months' incarceration[1].  On November 15, 2017, November 16, 2017, December 7, 2017, December 15, 2017, and January 5, 2018, probation violation hearings were held for Defendant's Carry Handgun conviction.

On August 13, 2018, Defendant was convicted of Rogue and Vagabond in Criminal Circuit Court for Montgomery County, Maryland, in case number 131469C.  Defendant was sentenced to 3 years' incarceration with all but 113 days suspended.  Defendant was sentenced to 1 year and 6 months of supervised probation.  On December 16, 2020, he was convicted of a probation violation for this offense.

---

[1] Defendant's Pretrial Services Report states that his sentence was suspended 3 years and sentenced to 4 years' supervised probation.

Based on the sentences imposed in his prior cases, Defendant would have been aware that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year at the time he was possessing the firearm and ammunition in the instant case.[2]

On April 8, 2026, Defendant was initially charged for the instant conduct in the Superior Court of the District of Columbia for Unlawful Possession of a Firearm (Prior Crime of Violence) and Carrying a Pistol Without a License (Outside Home or Business), under case number 2026 CF2 005274. On April 10, 2026, the Government charged Defendant by complaint in the U.S. District Court for the District of Columbia. Defendant was charged with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). When determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. *See* 18 U.S.C. § 3142(g).

In making the pretrial detention determination, the "rules concerning the admissibility of

---

[2] On March 31, 2016, a domestic violence case was filed against Defendant in the Civil System of the District Court for Maryland County, in case number 0601SP004812016. On April 13, 2016, the court ordered Defendant to a number of conditions, including an order to surrender his firearms.

evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210 and *Williams*, 798 F. Supp. at 36.

The Government seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm). The facts and circumstances in this case demonstrate that there are no conditions or combination of conditions that would assure the safety of the community or Defendant's return to Court should he be released. *See* 18 U.S.C. § 3142(e)(1). All four § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.

## I.   The Nature and Circumstances of this Offense Merit Detention.

The scourge of guns like the one that Defendant possessed fundamentally threatens this community's safety, and this Court has repeatedly warned against discounting the inherent danger associated with loaded guns. *See United States v. Blackson*, 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) (explaining that the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally

8

manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (Faruqui, M.J.) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020).

This crime presents a particular danger to the community for several reasons. First, Defendant was walking in a residential area of Washington, D.C., "waving a gun" in the air. Second, Defendant fled on foot with a firearm on his waistband when approached by law enforcement. Third, Defendant continued to endanger the public and the law enforcement officers attempting to subdue him by keeping his hand on the firearm in his waistband. While officers conducted a pat down search of Defendant's person, he continued to keep his left hand on the firearm in his waistband, despite law enforcement telling him to "let go" of the firearm multiple times. Fourth, the Springfield Armory 9 millimeter firearm recovered from Defendant was loaded with one round of ammunition in the chamber and 6 rounds in the magazine. Fifth, a backpack recovered from Defendant's back contained evidence consistent with controlled substances. Particularly, law enforcement recovered four clear plastic bags, each containing a different substance. The bags consisted of: (1) one plastic bag of a beige-off-white color wax-like substance, weighing 5 grams, and field testing positive for THC; (2) one plastic bag of a black, tar-like substance, weighing 3 grams, and field testing positive for Heroin; (3) one plastic bag of a white-powdery substance, weighing 1.4 grams, and field testing positive for Crack Cocaine; and (4) one plastic bag of crushed blue pills, weighing 3.1 grams, and field testing positive for MDMA/Ecstasy.

The facts of the instant case indicate that Defendant not only possessed a firearm but also refused to comply with law enforcement commands.  Law enforcement officers were forced to pepper spray Defendant for him to let go of the Springfield Armory firearm.  During the pat down search, Defendant could have accidentally discharged the firearm because he refused to comply with law enforcement commands to drop the weapon.

The Court has repeatedly held that even the possession of an illegal firearm poses a risk of danger to the community.  *See, e.g.*, *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases and holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

Defendant's possession of a firearm, despite his status as a convicted felon for another felon in possession of a firearm offense, demonstrates either an inability or unwillingness to comply with the District of Columbia's firearms law.  The danger posed by firearms, such as the one recovered here, cannot be overstated.  It is also particularly concerning that Defendant insisted on keeping a firearm unsecured on his waistband while law enforcement tried to search his person. The firearm recovered was loaded with one round of ammunition in the chamber and six additional rounds in the magazine.  Further, Defendant created an even greater risk to himself, the

10

community, and the officers involved in his arrest by running away from law enforcement in a residential area with a firearm and keeping his hand on the weapon, despite being commanded to let go of it. Defendant's conduct emphasizes his disregard for court-ordered rules and laws regulating his conduct in regard to contraband, especially in light of his prior convictions involving firearms. Accordingly, this factor favors detention.

## II.    The Weight of the Evidence Against Defendant Favors Detention.

The second factor to be considered—the weight of the evidence—also favors detention. The Government's case against Defendant is strong.[3]  Officers located a firearm on Defendant's waistband during a pat down search. The pat down search was conducted after a 911 caller stated that a man with a red coat and black pants was "waving a gun" in the area that the defendant was found walking.

Law enforcement body camera footage shows Defendant walking near 1100 2nd Place SE, where the 911 caller stated that a man with a gun was seen. Defendant was approached by a law enforcement officer and immediately fled on foot.  Thereafter, law enforcement subdued Defendant and conducted a pat down search when the Springfield Armony firearm was recovered from Defendant's waistband. "[I]f the evidence against a defendant is overwhelming, credible,

---

[3] Here, the weight of the evidence should be considered equally with the other § 3142 factors.  In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30.  Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.*  In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).  Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue.  *United States v. Zhe Zhang*, 55 F.4th 141, 149-50 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang*; this factor should be given no less weight.

11

helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at \*29-30. Here, the weight and strength of the evidence increases the prospect that Defendant will present a danger to the community if released.

III.     **Defendant's History and Characteristics Also Favor Detention.**

The third factor—the history and characteristics of the defendant—also favors detention. According to the Pretrial Services Report, Defendant has five prior adult convictions.

A criminal history check revealed that on January 15, 2020, Defendant was convicted of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18, United States Code, Section 922(g)(1) in United States District Court for the District of Columbia, case number 1:19-CR-00011. Defendant knowingly possessed a Black KAHR PM9 handgun containing seven rounds of ammunition inside of his compression shorts and a black revolver handgun, containing five rounds of ammunition in a brown leather backpack that he carried. He received a sentence in that case of 27 months' imprisonment with 36 months of supervised release.

On September 2, 2016, Defendant was convicted of Resisting or Interfering with Arrest in Criminal District Court for Montgomery County, Maryland, in case number 1D00356945. Defendant was sentenced to 1 year incarceration with 1 year of incarceration suspended. In addition, Defendant was sentenced to probation until June 30, 2017, and to pay costs and fines.

On April 7, 2017, Defendant was convicted of Carry Handgun in Criminal Circuit Court for Prince George's County, Maryland, in case number CT160275X and sentenced to 8 months' incarceration. On November 15, 2017, November 16, 2017, December 7, 2017, December 15,

2017, and January 5, 2018, probation violation hearings were held for Defendant's Carry Handgun conviction.

On August 13, 2018, Defendant was convicted of Rogue and Vagabond in Criminal Circuit Court for Montgomery County, Maryland, in case number 131469C.  Defendant was sentenced to 3 years' incarceration with all but 113 days suspended.  In addition, Defendant was sentenced to 1 year and 6 months of supervised probation.  On December 16, 2020, he was convicted of a probation violation on December 16, 2020, for this offense.

Defendant's criminal history indicates that he has been convicted of two prior firearm offenses.  Defendant's repeated offenses and convictions involving firearms and subsequent probation violations show that he is no stranger to disregarding court orders.  Defendant nevertheless in the instant case unlawfully obtained yet another firearm, after sustaining convictions that clearly prohibited him from possessing one.  This pattern of conduct underscores Defendant's continued disregard for the law and demonstrates that he cannot be trusted to comply with any conditions of release.

Defendant's history of criminal convictions indicates that there is no condition or set of conditions that can reasonably assure his presence and the safety of the community.  He was just convicted of similar dangerous conduct in 2023.  For these reasons, Defendant's repeated criminal history and characteristics favor detention.

## IV.      Defendants Present a Danger to Our Community.

The fourth and final factor—danger to any person or the community posed by Defendant's release—similarly weighs in favor of detention.  The D.C. Circuit has noted that "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community," pretrial detention is available to "disable the

arrestee from executing that threat." *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This factor requires the Court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that the defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Focusing on the circumstances here and looking forward, Defendant's conduct shows a repeated, flagrant, and unjustifiable disregard for the safety of the community. First, Defendant's conduct endangered members of the community as he fled from law enforcement with an unsecured firearm in his waistband in a residential area. Defendant could have mistakenly discharged the firearm since he had one round of ammunition in the chamber and six rounds of ammunition in the magazine, and he kept his hand on the weapon after law enforcement repeatedly ordered him to let go. In addition, Defendant has two prior convictions for possessing a firearm, when he was not legally permitted to do so. Defendant's history is an indication of how he would perform on supervision if he were released in the instant matter. He continues to commit the same crime. Given Defendant's history with guns, his conduct portends continued possession of illegal firearms. Accordingly, this factor also favors detention.

14

## **CONCLUSION**

The Government respectfully requests that the Court issue an Order granting its motion

that Defendant be held without bond pending trial.

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney

By:    /s/ Ursula Simmons
Ursula Simmons
NY Bar No. 5816061
Special Assistant United States Attorney
Federal Major Crimes Section
United States Attorney's Office for D.C.
601 D Street NW, Fifth Floor
Washington, D.C. 20530
Ursula.Simmons@usdoj.gov
(202) 809-0787